

**IT IS ORDERED as set forth below:**

**Date: September 30, 2020**

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| CLIFTON RAY DODGE, | CASE NO. 20-60537-PWB |
| Debtor. | CHAPTER 7 |
| STRATEGIC FUNDING SOURCE, INC. d/b/a KAPITUS, | |
| Plaintiff, | ADVERSARY PROCEEDING NO. 20-6060-PWB |
| v. | |
| CLIFTON RAY DODGE, | |
| Defendant. | |

ORDER ON DEBTOR'S MOTION TO DISMISS AMENDED COMPLAINT

Strategic Funding Source, Inc., d/b/a Kapitus ("Kapitus") seeks a determination that that the debt owed to it by the Debtor, Clifton Ray Dodge, is nondischageable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B), (a)(4)¸and (a)(6). The Debtor contends that Kapitus's claims under §§ 523(a)(4) and (a)(6) fail to state a claim upon which relief may be granted and, as a result, must be dismissed. For the reasons stated herein, the motion is granted in part and denied in part.

## I. Factual Background

The Debtor was the managing partner and sole owner of a Georgia company, Pure Strength, LLC ("Pure Strength"). Pursuant to a factoring agreement and security agreement (the "Agreement") dated April 3, 2018, Kapitus purchased $121,400 of Pure Strength's receivables for a purchase price of $86,100. The Agreement provided for Pure Strength to remit 13% of its receipts to Kapitus and for Kapitus to debit $539 on a daily basis from a Pure Strength bank account dedicated solely for payment of the debt (the "Account") until full payment occurred. The Debtor signed the Agreement in his corporate capacity and personally guaranteed it.

Kapitus contends that it relied on written and oral statements of the Debtor in its decision to enter into the Agreement. First, Kapitus contends that the Debtor represented in a merchant cash-advance application (completed four days prior to the Agreement) that Pure Strength had gross annual sales of $980,000 and that it would use any funding for working capital. In addition, in a "Pre-funding Call" between a Kapitus

representative and the Debtor, Kapitus asserts, the Debtor orally represented: that he did not anticipate closing or selling his business in the next 12 months; that he was not in arrears on any loans with any financial institutions; and that he owed $10,000 on another working capital loan but that it was being paid off. Kapitus contends all of these representations were false.

Kapitus asserts that on July 2, 2018, four months after the execution of the Agreement, Pure Strength defaulted on its payment obligations and closed the Account. Kapitus contends the Debtor purposely caused the Account to have insufficient funds and closed the Account to prevent Kapitus's contractual payments. Kapitus alleges that Pure Strength continued to operate until August 26, 2019. Kapitus asserts that it received $31,386.52 of the total owed.

Kapitus seeks a determination that its debt is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) (fraud), (a)(4) (fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny), and (a)(6) (willful and malicious injury to property).[1]

The Debtor seeks dismissal of Counts III (§ 523(a)(4)) and Count IV (§ 523(a)(6)) on the ground that they fail to state claims upon which relief may be granted.[2]

---

[1] The Debtor's motion does not seek dismissal of Counts I and II (§§ 523(a)(2)(A) and (B).

[2] After the filing of the amended complaint, the Debtor filed a second motion to dismiss the amended complaint to which Kapitus filed a response. Because the amended complaint, second motion, and the response to it supersede the arguments of

With respect to § 523(a)(4), the Debtor contends that the claim fails because the (1) the debtor-creditor relationship between the Debtor and Kapitus does not satisfy the fiduciary relationship requirement; and (2) no express or technical trust existed. In response, Kapitus contends the fiduciary requirement is met because under Georgia law an officer or director of an insolvent company owes fiduciary duties to creditors.[3]

The Debtor asserts that Kapitus's § 523(a)(6) count does not state a claim for relief because a breach of contract, even if such breach is intentional, does not satisfy the "willful" and "malicious" standard of § 523(a)(6). Further, the Debtor contends that Kapitus's allegations are conclusory and without factual support. In response, Kapitus contends that its amended complaint states a claim under § 523(a)(6) because the facts allege that the Debtor converted Kapitus's property or, alternatively, that his knowing breach of a clear contractual obligation was certain to cause injury and was, therefore, willful and malicious.

## II. <u>Analysis</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint "does not need detailed factual allegations," but those allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555

---

the first motion, the Court addresses the arguments raised in the second motion and response only.

[3] Kapitus further contends that Virginia law, which governs the Agreement, recognizes that an express trust does not have to be in writing but can be found based upon the intent of the parties to vest the legal estate in one person on the behalf of another. The Court declines to address this contention because Kapitus has cited no legal authority for such a proposition.

(2007). A claim must have "facial plausibility," which is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In ruling on a motion to dismiss, the court must accept all of the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id.*

A. Section 523(a)(4)

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

For a debt to be nondischargeable based upon defalcation while acting in a fiduciary capacity, the debtor must have stood in a fiduciary relationship with the creditor alleging nondischargeability of the debt; the fiduciary relationship must have existed prior to the creation of the debt; and the debt must have resulted from some act of fraud or defalcation by the debtor. *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 953-955 (11th Cir. 1993).

The Court concludes that Kapitus has not alleged facts to support a claim for fraud or defalcation while acting in a fiduciary capacity because it has not alleged facts to establish a fiduciary relationship existed between the Debtor and itself.[4]

---

[4] The Debtor has not sought dismissal of any claim based on a theory of embezzlement or larceny and, therefore, the Court does not address those grounds.

The existence of a fiduciary relationship under § 523(a)(4) is a matter of federal law. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934). Although an officer of an insolvent corporation may be a fiduciary for creditors under state law, the officer may not be deemed, on that basis alone, a fiduciary under 523(a)(4). *Follett Higher Education Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767 (7th Cir. 2011).

Under Georgia law, generally, the officer of an insolvent company owes that company's creditors certain fiduciary-like obligations. *See Hickman v. Hyzer*, 261 Ga. 38, 40, 401 S.E.2d 738, 740 (Ga.1991) (*quoting Ware v. Rankin*, 97 Ga.App. 837, 838, 104 S.E.2d 555 (1958)) ("When a corporation becomes insolvent its directors are bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves.").

Kapitus insists that it was in a fiduciary relationship with the Debtor because the Debtor's company, Pure Strength, was insolvent. The Court concludes that no fiduciary relationship within the meaning of § 523(a)(4) existed between the parties.

For purposes of the exception to discharge in § 523(a)(4), "the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 953 (11th Cir. 1993). A technical trust is "an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation." *In re Ferland*, 2010 WL 2600588 *3 (Bankr. M.D. Ga. 2010) (*citing Quaif*, 4 F.3d at 953-954). A technical trust relationship must exist prior to the act creating the debt and without reference to that

act. As a result, "the debtor must owe a fiduciary duty to his creditors which pre-existed the act creating the debt. It is insufficient if the act which creates the debt simultaneously creates the trust relationship." *Eavenson v. Ramey*, 243 B.R. 160, 165 (N.D. Ga. 1999).

As an initial matter, the Agreement itself does not create a fiduciary relationship. Kapitus and the Debtor were simply parties to a contract and, while the contract imposed obligations on the Debtor's company with respect to repayment of a debt, none of those obligations could be construed as fiduciary in nature.

Second, the general fiduciary duty that state law imposes on a corporate officer when a company is insolvent does not establish the type of technical trust that is necessary to except a debt from discharge based on fraud or defalcation in a fiduciary capacity. *See Follett Higher Education Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767 (7th Cir. 2011); In *re Moeller*, 466 B.R. 525 (Bankr. S.D. Cal. 2012); *Tarpon Point, LLC v. Wheelus (In re Wheelus)*, 2008 WL 372470 (Bankr. M.D. Ga. 2008); *see also, Heard v. Perkins*, 441 B.R. 701 (N.D. Ala. 2010) (dismissing trustee's claims against insolvent company's CEO for breach of fiduciary duty under Georgia law).

In *Follett Higher Education Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767-768 (7th Cir. 2011) (citations omitted), the Seventh Circuit explained why § 523(a)(4)'s reference to fiduciary capacity is narrowly construed:

> The Supreme Court taught in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), that the non-dischargeability exception's reference to fiduciary capacity was 'strict and narrow.' As Justice Cardozo

> wrote for the Court, the debtor 'must have been a trustee before the wrong and without reference thereto.' Those facts are not present in a situation such as this, where the corporation's breach of its contract created the debt. The resulting obligation to the creditor is not 'turned into' one arising from a trust. Such obligations are 'remote from the conventional trust or fiduciary setting, in which someone ... in whom confidence is reposed is entrusted with another person's money for safekeeping.' At least in the absence of fraud, we decline to stretch the section 523(a)(4) exception so far as to make officers and directors of insolvent corporations personally liable, without the ability to secure discharge in bankruptcy, for a wide range of corporate debts.

This Court concurs with *Berman's* analysis. Imposing a fiduciary relationship between an officer of an insolvent company and a creditor is "remote from the conventional trust or fiduciary setting, in which someone ... in whom confidence is reposed is entrusted with another person's money for safekeeping." *Berman*, 629 F.3d at 767. Duties of loyalty, good faith, and care – to the extent they exist - are too general to establish an express or technical trust as that term is understood for purposes of § 523(a)(4).[5]

[5] While the Court is aware that other courts have reached contrary conclusions, *see In re Naguszewski*, 2009 WL 6499348 (Bankr. N.D. Ga. 2009), *In re Pharr-Luke*, 259 B.R. 426 (Bankr. S.D. Ga. 2000), the Court respectfully disagrees.

Based on the foregoing, the Court concludes that the amended complaint fails to state a claim for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4).

B. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." The Supreme Court has held that because the word "willful" modifies the word "injury," a finding of nondischargeability requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Thus, negligent or reckless conduct does not fall within the "willful and malicious injury" exception to discharge. Under § 523(a)(6), the debtor must intend the consequences of an act and not simply the act itself. *Id.*, 523 U.S. at 61-62 (*citing* RESTATEMENT (SECOND) OF TORTS § 8a *cmt*. A (1964)). A "malicious" injury is one which is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (citations omitted). Malice may be implied or constructive. *Id.*

Conversion of property may fall within the § 523(a)(6) exception to discharge. *See Adler v. Hertling*, 215 Ga.App. 769, 772, 451 S.E.2d 91, 96 (1994) (under Georgia law, conversion "consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with its rights; or an unauthorized appropriation.").

The Debtor asserts that Kapitus's § 523(a)(6) count does not state a claim for relief because a breach of contract, even if such breach is intentional, does not satisfy the "willful" and "malicious" standard of § 523(a)(6). Kapitus contends that its amended complaint states a claim under § 523(a)(6) because the facts allege that the Debtor converted Kapitus's property or, alternatively, that his knowing breach of a clear contractual obligation was certain to cause injury and was, therefore, willful and malicious.

The Court concludes that Kapitus's amended complaint sufficiently states a claim for relief under § 523(a)(6).

The Agreement [Doc. 7 at 26] provides that Pure Strength "hereby sells, assigns and transfers to [Kapitus] . . . all of [Pure Strength's] future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from [its] customers and/or other third party payors (collectively the 'Receipts' defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of [its] business." In addition, the Agreement provided that there would be an exclusive depositing account (the "Account") to remit the daily percentage receipts.

Kapitus alleges that (1) the Debtor intentionally caused Pure Strength to stop depositing all its receipts into the Account; (2) caused Pure Strength to close the Account; and (3) converted the receipts, which it had purchased, by exercising ownership of the receipts without Kapitus's authorization and to the exclusion of Kapitus's rights. (Amended Complaint, ¶¶ 105, 106, 108(l)).

The Court concludes that these allegations satisfy the facial plausibility test of *Twombly* and *Iqbal* and are sufficient to permit the Debtor to prepare an answer.

The Court notes, however, that a number of allegations in Count IV do not state a claim for relief under § 523(a)(6). Kapitus asserts that the Debtor entered into the Agreement with the specific intent not to use the proceeds for business purposes and not to pay Kapitus's debt and that the Debtor made false statement to Kapitus with the intent to induce it to transfer the funds. [Amended Complaint, ¶ 104]. These allegations are relevant to a claim for fraud (§ 523(a)(2)), not willful and malicious injury to property.

The same conclusion applies to the allegations in subparagraphs 108(a) through (f) of the Amended Complaint: that the Debtor "willfully and maliciously" executed the Agreement in which he made misrepresentations about his financial condition and is intent to use the funds for business purposes; that he "willfully and maliciously" represented to Kapitus that Pure Strength had no other balances with other merchant cash advance providers and was not in arrears on any loans; and that he "willfully and maliciously" made material omissions of fact and provided false and deceiving information. Again, these allegations are relevant to claim for fraud; adding the terms "willful" and "malicious" to the assertions does not create a claim under § 523(a)(6).

**III. <u>Conclusion</u>**

For the foregoing reasons the Court concludes that Kapitus's amended complaint (1) fails to state a claim for fraud or defalcation while acting in a fiduciary capacity

under § 523(a)(4); and (2) sufficiently states a claim for relief under § 523(a)(6). Accordingly, it is

ORDERED that the motion to dismiss the amended complaint [Doc. 10] is granted in part and denied in part. The motion is granted and Count III is dismissed to the extent the § 523(a)(4) claim is based on the contention the debt is one for fraud or defalcation while acting in a fiduciary capacity. The motion is denied as to Count IV.

**END OF ORDER**

**Distribution List**

Justan C. Bounds
Carlton Fields, P.A.
1201 W Peachtree Street
Suite 3000
Atlanta, GA 30309

Will B. Geer
Wiggam & Geer, LLC
Suite 1150
50 Hurt Plaza SE
Atlanta, GA 30303